893 So.2d 1173 (2004)
ALABAMA STATE PERSONNEL BOARD and Alabama Public Television
v.
John HARDEMAN.
2020856.
Court of Civil Appeals of Alabama.
April 16, 2004.
*1174 Alice Ann Byrne, for appellant State of Alabama Personnel Department.
Ellen Leonard, asst. atty. gen., for appellant Alabama Public Television.
Jay Lewis and Eileen L. Harris of Law Offices of Jay Lewis, LLC, Montgomery, for appellee.
CRAWLEY, Judge.
The Alabama State Personnel Board ("the Personnel Board") and Alabama Public Television ("APT") appeal from the trial court's judgment holding that John Hardeman was entitled to back pay for a period when his employment with APT had been terminated.
APT terminated Hardeman's employment on October 5, 2001; it charged in a letter dated October 4, 2001, that his dismissal was because of repeated absences from work and that Hardeman's most recent absence had caused APT an "extreme hardship." Hardeman appealed APT's decision to terminate his employment to the Personnel Board. On April 12, 2002, APT supplemented its dismissal charges against Hardeman to include his alleged trespassing onto APT property and his alleged threatening communications to certain APT employees after his dismissal. An administrative law judge ("ALJ") conducted a hearing on Hardeman's appeal on May 1, 2002, and on June 22, 2002, the ALJ entered a report containing findings and a recommendation that the Personnel Board reinstate Hardeman and provide him back pay for the period when his employment had been terminated. APT filed exceptions to the ALJ's report with the Personnel Board.
The Personnel Board then conducted a review of the record submitted, the ALJ's report, APT's exceptions to the report, and it heard oral arguments from the parties. Upon consideration of those filings and the parties' arguments, the Personnel Board entered an order that stated, in pertinent part:
"Essentially, the charges against [Hardeman] are a pattern of unscheduled absences which worked a hardship on [APT]. An amended termination was subsequently filed charging [Hardeman] with making threats and violating directives given by the supervisors, including trespassing.
"The [ALJ] found that the charges as brought by [APT] were not supported by the evidence and recommended that [Hardeman's] dismissal be overturned.
"The [Personnel] Board has carefully considered the [ALJ's] report in this case, the record, including the transcript of the case, the written exceptions and oral argument and is of the opinion that the decision of [APT] to dismiss [Hardeman] *1175 is supported by the evidence and that termination is warranted.
"This case does not involve a determination of credibility by the [ALJ]. The facts are undisputed. [Hardeman's] evaluations for the preceding two years reflect write-ups for absenteeism, including reporting to work smelling of alcohol. [Hardeman] had difficulty focusing on his job, missed work without advanced notice and was often late to work, placing [APT] in a difficult situation due to [Hardeman] being one of only two people capable of performing essential work. [APT] was in a `critical period' during this time period because [APT] was conducting 24-hour network operations feeding programs from the Montgomery studio to the [APT] network in Alabama. [APT] was forced to hire another individual to cover [Hardeman's] duties. Evidence was presented that [Hardeman] chose to attend alcohol treatment because his attorney informed him that it would be helpful to a pending [driving-under-the-influence (`DUI')] charge, not because [Hardeman] believed he needed treatment. (This was [Hardeman's] second DUI charge.)
"Employers have a right to expect employees to come to work, on time, in a condition to properly perform their job. Because [Hardeman] `calls in' to inform [APT] that he will be late or absent from work, does not excuse the fact that the work does not get performed and that it places [APT] in an untenable position.
"The undisputed evidence on the original charge clearly supports the termination.
"In the alternative, additional grounds, as outlined in the amended charges, also warrant the upholding of [Hardeman's] termination. Common sense must prevail. A terminated employee cannot disobey directives relating to [APT], threaten employees, commit a crime, and then expect that these actions not be taken into account when termination and/or reinstatement is considered.
"The [Personnel] Board has searched the record for mitigation and finds, however, that mitigation is appropriate in this case. [Hardeman] was called into a supervisor's office and informed, for the first time, that he was attending his pre-dismissal conference. Though any due process problem was potentially cured by the de novo hearing before the ... Personnel Board's [ALJ], this lack of advance notice clearly could have placed [Hardeman] at a disadvantage.
"It is therefore the order of [the Personnel] Board that [Hardeman] be reinstated to his former position without any back pay or benefits. Further, due to [Hardeman's] absences as well as his actions subsequent to his termination, including the conviction for criminal trespass on the property of [APT], [Hardeman] will be returned to work in a probationary status for a period of one year."
Hardeman then filed a notice of appeal and a petition for review to the trial court, as provided by § 41-22-20, Ala.Code 1975. The Personnel Board and APT filed an answer to Hardeman's petition for review. The parties filed briefs with the trial court in support of their respective positions. The trial court then conducted a review of those briefs and the transcript of the proceedings conducted by the Personnel Board, and it entered an order that stated, in pertinent part:
"[Hardeman] was employed with [APT] for 16 years. [Hardeman] was dismissed from his employment on allegations that he violated the sick leave policy of his employer. An employee of APT, Mary Davis, also swore out a warrant *1176 at the direction of her employer against [Hardeman] for Criminal Trespass III.1 [Hardeman] appealed his termination wherein [an ALJ] for the ... Personnel [Board] had a hearing concerning [Hardeman's] dismissal. [The ALJ] wrote an exceptional report concerning the circumstances surrounding [Hardeman's] firing. The [ALJ], in his report, stated that there were absolutely no grounds to fire [Hardeman] and the treatment of [Hardeman] during the termination process was appalling. The [ALJ] recommended reinstating [Hardeman] with full back pay and benefits from the date of his termination. On August 14, 2002, the matter was heard before the entire ... Personnel Board who issued an order reinstating [Hardeman] to his former position without back pay and benefits and also stating that [Hardeman] would be on a probationary status for one year.
"Pursuant to § 41-22-20(k)(6), Code of Alabama, 1975, this court finds that the ... Personnel Board's decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. The ... Personnel Board stated in its findings that they whole-heartedly accepted the creditability of the [ALJ's] report as it related to the evidence presented at the hearing. It is glaringly obvious from the transcript that the treatment of [Hardeman] by his employer was absolutely horrible and unreasonable.
"Wherefore it is ORDERED that this court finds that [Hardeman] should in fact be reinstated with no restrictions and full back pay and benefits. This court adopts the [ALJ's] findings and recommendations and orders that [Hardeman] is reinstated with full back pay and benefits from the date of termination with no probationary period to serve.
"__________
"1 These charges were appealed to the Honorable William Shashy who subsequently threw out the charges."
The Personnel Board and APT then filed a notice of appeal to this court.
On appeal, the Personnel Board and APT argue that the trial court erred and that its judgment is due to be reversed because, they say, (1) the Personnel Board's decision was a valid exercise of authority that was based on adequate supporting evidence, and (2) the trial court failed to provide specific reasons to support its reversal pursuant to § 41-22-20(l), Ala.Code 1975. With respect to the applicable standard of review, this court has stated:
"This court reviews a trial court's judgment regarding the decision of an administrative agency `without any presumption of its correctness, since [the trial] court was in no better position to review the [agency's decision] than' this court. State Health Planning & Res. Dev. Admin. v. Rivendell of Alabama, Inc., 469 So.2d 613, 614 (Ala.Civ.App.1985). Under the Alabama Administrative Procedure Act (`AAPA'), § 41-22-1 et seq., Ala.Code 1975, which governs judicial review of agency decisions,
"`[e]xcept where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from *1177 the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency or if substantial rights of the petitioner have been prejudiced because the agency action is any one or more of the following:
"`(1) In violation of constitutional or statutory provisions;
"`(2) In excess of the statutory authority of the agency;
"`(3) In violation of any pertinent agency rule;
"`(4) Made upon unlawful procedure;
"`(5) Affected by other error of law;
"`(6) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
"`(7) Unreasonable, arbitrary, or capricious, or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion.'
"§ 41-22-20(k), Ala.Code 1975.... In reviewing the decision of a state administrative agency, `[t]he special competence of the agency lends great weight to its decision, and that decision must be affirmed, unless it is arbitrary and capricious or not made in compliance with applicable law.' Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993).... Neither this court nor the trial court may substitute its judgment for that of the administrative agency. Alabama Renal Stone Inst., Inc. v. Alabama Statewide Health Coordinating Council, 628 So.2d 821, 823 (Ala.Civ.App.1993). `This holds true even in cases where the testimony is generalized, the evidence is meager, and reasonable minds might differ as to the correct result.' Health Care Auth. of Huntsville v. State Health Planning Agency, 549 So.2d 973, 975 (Ala.Civ.App.1989). Further, `an agency's interpretation of its own rule or regulation must stand if it is reasonable, even though it may not appear as reasonable as some other interpretation.' Sylacauga Health Care Ctr., Inc. v. Alabama State Health Planning Agency, 662 So.2d 265, 268 (Ala.Civ.App.1994)."
Colonial Mgmt. Group, L.P. v. State Health Planning & Dev. Agency, 853 So.2d 972, 974-75 (Ala.Civ.App.2002)(emphasis omitted).
The Personnel Board determined that while the evidence did support the charges offered by APT as a basis to terminate Hardeman's employment, it opted to impose a lesser penalty than dismissal in consideration of Hardeman's lack of notice concerning a predismissal conference. The Personnel Board's decision to impose a lesser penalty was within its authority as set out in § 36-26-27(a), Ala.Code 1975.
Section 36-26-27(a), Ala.Code 1975, provides:
"(a) An appointing authority may dismiss a classified employee whenever he considers the good of the service will be served thereby, for reasons which shall be stated in writing, served on the affected employee and a copy furnished to the director, which action shall become a public record. The dismissed employee may, within 10 days after notice, appeal from the action of the appointing authority by filing with the board and the appointing authority a written answer to the charges. The board shall, if demand is made in writing by the dismissed employee within 10 days after notice of discharge, order a public hearing and, if the charges are proved unwarranted, order *1178 the reinstatement of the employee under such conditions as the board may determine. Upon a majority vote of the board, the board may impose a punishment other than termination including but not limited to a reinstatement with forfeiture of back wages and benefits between the date of termination and the date of the board's order reinstating the employee, or a suspension up to and including 30 days."
(Emphasis added.) Our review of the caselaw construing this statute indicates that there is existing caselaw standing for the proposition that the Personnel Board could not find that the evidence supported the charges provided in support of Hardeman's dismissal but then enter a lesser penalty because of Hardeman's lack of notice of the predismissal conference. In Hilyer v. Blackwell, 377 So.2d 1090, 1091-92 (Ala.Civ.App.1979), this court stated:
"It is the contention of the Department of Public Safety that in view of the finding of the [Personnel] Board that the evidence sustained the charges brought by the Director [of Public Safety] against the trooper, the Personnel Board was without authority to lessen the penalty imposed by the director. We agree that is the case.
"It is to be noted that § 36-26-27 provides two methods for dismissal or removal of a classified employee: (a) An employee may be dismissed for stated reasons by the appointing authority whenever he considers it will serve the good of the service; and (b) [i]n addition to removal by the appointing authority, classified employees may be removed by the personnel board after hearing upon charges filed by any officer, citizen or taxpayer of the state. If dismissed by the appointing authority, the employee may appeal to the Personnel Board. If, after public hearing, the charges are proved unwarranted, the Board shall order reinstatement under such conditions as it may determine.
"It appears that the legislature intended that dismissal by the appointing authority for the good of the service be reviewed by the Personnel Board only to determine if the reasons stated for the dismissal are sustained by evidence presented at the hearing. It is only `if the charges are proved unwarranted' that the Board may order reinstatement with lesser punishment. It was stated in the case of Waggoner v. Whatley, 282 Ala. 84, 209 So.2d 370 (1968) [,] that the review of the dismissal by the appointing authority is `to the end that such affected persons may be assured bad faith was not present, and that the appointing authority was not influenced by political or kindred reprisal.'
"In this case, the Board found the charges brought sustained but ordered reinstatement because dismissal was too harsh a punishment. A finding of `sustained' is contrary to `unwarranted.' The latter is the only finding which invokes the authority of the Board to reinstate the dismissed employee. The Board is not authorized to determine the charge of the appointing authority sustained by the evidence, yet set aside the dismissal because in the opinion of the Board dismissal is to harsh a penalty. We hold § 36-26-27 does not grant to the Board any power of reinstatement after dismissal by the appointing authority unless the charges for which the employee was dismissed are `proved unwarranted' at the hearing. To hold otherwise permits the Board to determine the punishment rather than the issue of guilty as charged."
(Footnote omitted; emphasis added.) See also Stewart v. Hilyer, 376 So.2d 727, 730 (Ala.Civ.App.1979)("The Board is authorized *1179 by § 36-26-27 to impose `conditions' only when it finds the appointing authority's charges to be unproved. [If the Personnel Board finds the charges to be proved,] the only path open to it under the above cited statute [is] to uphold the Department's dismissal of [the employee].").
However, § 36-26-27(a), Ala.Code 1975, was amended in 1983 in order to provide additional procedures governing disciplining and dismissal of employees in the state classified service. See Act No. 83-673, Ala. Acts 1983. In Ex parte Burks, 487 So.2d 905 (Ala.1985), our supreme court noted that the amended version of § 36-26-27(a) provides the Personnel Board the authority to impose lesser penalties and that the amendment was remedial in nature and "correct[ed] what may [have been] perceived as a defect in the original statute." 487 So.2d at 907. See also Alabama Dep't of Mental Health & Mental Retardation v. Kirby, 579 So.2d 675 (Ala.Civ.App.1991). We note this evolution in the statute and the caselaw interpreting it because the bench and bar can benefit from the knowledge that Hilyer v. Blackwell, 377 So.2d 1090 (Ala.Civ.App.1979), and Stewart v. Hilyer, 376 So.2d 727 (Ala.Civ.App.1979) have, at least in part, been superseded by the 1983 amendment to § 36-26-27(a), Ala.Code 1975, although we have found no clear statement concerning this in our existing caselaw.
Therefore, we are presented with the issue whether the Personnel Board's judgment holding that the charges were supported by the evidence prejudiced the substantial rights of Hardeman for one of the enumerated reasons provided in § 41-22-20(k), Ala.Code 1975. If the Personnel Board's judgment did prejudice the substantial rights of Hardeman, the trial court's judgment is due to be affirmed; if it did not, the Personnel Board's decision is due to be upheld.
The Personnel Board was limited to a consideration of Hardeman's job performance during the three-year period preceding his dismissal, see § 36-26-29, Ala.Code 1975; furthermore, the supplemental charges provided by APT could not be considered by the Personnel Board because the events supporting those charges occurred after Hardeman's employment was terminated. However, our review of the record that was before the Personnel Board shows that there was evidence indicating that Hardeman had reported to work late and had been sent home for smelling of alcohol during the three-year period preceding his dismissal. We find that those events provided sufficient cause for APT to terminate Hardeman's employment and for the Personnel Board to determine that the charges offered by APT were supported by the evidence.
As Presiding Judge Yates discusses in her dissenting opinion, the ALJ provided an exhaustive opinion that was persuasive. However, we must apply the proper standard of review and afford a presumption of correctness in favor of the Personnel Board's findings and not the ALJ's findings. In Personnel Board of Alabama v. King, 456 So.2d 80, 82 (Ala.Civ.App.1984), this court acknowledged this principle by stating:
"[T]he provision for a hearing officer in the context of Personnel Board appeals is a result of the Personnel Board's own rules and regulations formulated pursuant to section 36-26-9, Ala.Code (1975). Because the hearing officer is not a co-equal statutory authority, we are reluctant to afford his findings such great weight as to make him as powerful as, or more powerful than, the Board which appointed him and which has the statutory duty to hear the appeal. See 2 Am.Jur.2d Administrative Law §§ 438-39 (1962)."
*1180 Accordingly, we reverse the trial court's judgment and remand the cause to the trial court for it to enter an order affirming the Personnel Board's decision.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, with writing.
YATES, P.J., dissents, with writing.
MURDOCK, Judge, concurring in the result.
I concur in the result reached by the majority opinion. I write separately to express my concern as to the declaration of law in that opinion that "the supplemental charges provided by APT could not be considered because the events supporting those charges occurred after Hardeman's employment was terminated."
Neither the employee nor the majority cite to any authority for this declaration of law, and I have been unable to find any. Moreover, I see no need to make this declaration in this case in order to reach the result reached by the majority. Nonetheless, because the main opinion includes this declaration in its analysis, and because this declaration may be dispositive in some future case, I find it necessary to explain my concern as to its validity.
Obviously, it is possible for employees to engage in conduct or make statements after their employment has been terminated that either (1) corroborate the validity of the preexisting grounds for the termination of their employment or (2) serve as independent or additional grounds for the termination of their employment, or for not rehiring them. Included in the latter category could be actions or statements by an employee that would be inconsistent with the employee's appeal of his or her termination (e.g., actions or statements that would make it impractical to expect a harmonious or productive working relationship to exist thereafter between the employee and other personnel). In the present case, there was evidence that the employee engaged in such conduct after the termination of his employment but before the first evidentiary hearing regarding that termination. In a situation such as that presented here, I see no reason why the additional grounds based on the employee's posttermination conduct could not be addressed in that evidentiary hearing. It strikes me as particularly impractical, and as inconsistent with precepts of "judicial economy," and it is not in my judgment something necessitated by fundamental fairness and due process, to require the employer to begin a second, parallel termination proceeding based upon the additional grounds when the first termination proceeding has not even reached the evidentiary-hearing stage and all grounds could be "noticed" sufficiently in advance of, and be heard in, that evidentiary hearing. In addition, it would seem appropriate, if not necessary, in many cases for multiple grounds to be considered together because they may provide context for or corroborate one another and because the decision-maker should be able to consider their cumulative import.
YATES, Presiding Judge, dissenting.
I agree with the Personnel Board's determination that Hardeman was denied due process when he was not timely notified of his pretermination hearing. In Stallworth v. City of Evergreen, 680 So.2d 229 (Ala.1996), our supreme court held that the employee's pretermination hearing was flawed and that the posttermination hearing "could not have remedied the earlier deprivation of [the employee]'s *1181 right to a constitutionally adequate pretermination hearing...." 680 So.2d at 235. In footnote 1 in Stallworth, the supreme court addressed whether the independent due-process requirement of an adequate posttermination hearing was met under the particular facts in Stallworth, and the court determined that the posttermination hearing was also flawed. Because the Stallworth court held that "no matter how fair and adequate the procedures at the post-termination hearing may be, the initial decision made after the pretermination hearing inevitably will have diminished significantly the employee's chances of prevailing at the posttermination hearing," 680 So.2d at 235, I agree that Hardeman was denied due process.
However, I disagree with the main opinion's conclusion that Alabama Public Television ("APT") had sufficient cause to dismiss Hardeman because Hardeman had reported late to work and had been sent home smelling of alcohol on one occasion during the three-year period before his dismissal. The record indicates that in September 2001 Hardeman, a 16-year employee of APT, met with his supervisor, Harvey Wilson, concerning his problem with alcohol and requested leave to attend a treatment facility. Robert Corley, director of APT, received a letter from an outpatient treatment facility regarding Hardeman's treatment. Hardeman submitted a leave request for the time periods of September 17, 2001 through September 21, 2001, and September 24, 2001, through September 28, 2001. Wilson granted Hardeman's leave request. Hardeman also submitted a leave request for October 1, 2001, through October 5, 2001, which was also granted. While Hardeman was on leave, he was contacted and told to attend a meeting on October 3, 2001, to discuss leave approval. At that meeting, Hardeman was informed that the purpose of the meeting was a "pretermination" hearing. On October 5, 2001, Hardeman was dismissed.
The administrative law judge, who heard the witnesses, found, in pertinent part, as follows:
"Since the Employee is a classified Merit System employee, he has a property interest in his job and may not be dismissed from his job without cause. That cause must relate to the employee's performance of his job. Since the Employee has a property interest in his job and the job may not be taken away without cause, he is entitled to due process of law in taking away his job. Due process simply consists of notice of the charges against him, including a summary of the evidence against him, and an effective opportunity to respond to the charges. The Employee did not have such an opportunity. He had no advance notice of any charges and no knowledge he was involved in a pretermination hearing until he was well into the meeting with his supervisors. The Department contends the Employee did not request additional time to respond to the charges. The Employee says he was so `overwhelmed' by what was happening he did not think to ask for additional time.... The Employee was led to believe by the granting of some of his requested sick leave that he was to be allowed to complete his treatment program. The Department made no effort to schedule the Employee's leave at a time more convenient nor did it make any effort to work with the Employee to find a time where both interests could be accommodated. Instead, it led the Employee to believe his treatment was approved until `out of the blue' the Employee with no prior notice, found himself in a `pretermination' hearing.... Cause to terminate an employee is not found because the Employee requested *1182 sick leave. The Department always has the option to deny the use of sick leave if the employee was not in fact ill. The supervisor's belief he was not sincere in his desire might have provided a basis to deny the leave but apparently the only reason the Employee was fired was found after the Department received advice it could fire the Employee. The Department did not make a decision to deny Mr. Hardeman his requested sick leave.... He was on approved prior requested sick leave from September 17 until the date of his termination. The Department offers an excuse for the granting of that sick leave that it simply did not know what to do with him until they received specific advice as to whether they had to approve his leave. As stated earlier, the only fair thing for the Department to do with the Employee once they determined they were not required to grant his leave was to tell him his leave would not be granted past a date certain and he either had to return to work or be fired. The Department did not do that; they simply fired him. There is absolutely no question in my mind that this firing was fundamentally unfair.
"The Department's purported reason for the denial of his requested leave was that the Employee had performance problems due to his alcohol use and prior treatment had failed. Additionally, his supervisors felt the Employee was `insincere' in his request to go to alcohol treatment. In fact, the evidence shows the Employee had received minor disciplinary actions on two occasions in two different years. There is no doubt the disciplinary action the Employee received when he reported to work smelling of alcohol is serious. However, the Department did not treat this workplace problem as particularly serious and only lowered his performance appraisal score in that year and gave him a reprimand. The only other disciplinary action the Department was able to show regarding the Employee was that in one year he had difficulty coming to work on time and called in and said he would be late. His supervisor, who supervised him for almost the entire 16-year history of his employment, said the Employee improved with this problem after he gave the Employee a warning. This must be true because there is no documentation by the Department to support the problem was not corrected. In other words, the Employee had a problem on one occasion and his supervisor spoke to him and administered disciplinary action for this problem, and the Employee corrected the problem. The problem with coming to work smelling like alcohol only occurred on one occasion and there is no evidence presented in this case the Employee did not respond to the disciplinary action meted out to him by his supervisor following that violation. The other difficulties with tardiness and/or attendance led to a written disciplinary action based on notes recorded by Mr. Wilson on his calendar. In essence, what we have is a 16-year State Merit System employee who had accumulated over 600 hours of sick leave and 400 hours of annual leave plus additional compensatory time, who has been accused by the Department of having an attendance problem. These facts simply do not support a serious attendance problem or tardiness problem.
"There is absolutely no doubt the Employee has been `whipped' by his alcohol problem. The evidence in this case shows he attended alcohol treatment on at least one prior occasion, possibly twice, and the treatment had not solved his problem. The Employee's testimony in his hearing was that he had not consumed *1183 alcohol from September 8, 2001 until May 1, 2002. Whether the treatment he attended in the fall of 2001 will solve his problem is unknown."
While I recognize that the Personnel Board may reject the administrative law judge's findings, this court has stated:
"`"[T]he Board may reject the [hearing officer's] findings, even though they are not clearly erroneous, if the other evidence provides sufficient support for the Board's decision. But it seems that the Board's supporting evidence, in cases where it rejects the [hearing officer's] findings, must be stronger than would be required in cases where the findings are accepted, since in the former cases the supporting evidence must be deemed substantial when measured against the [hearing officer's] contrary findings as well as the opposing evidence."'
"[Personnel Board v.] King, [456 So.2d 80,] 82 [(Ala.Civ.App.1984)] (quoting NLRB v. Interboro Contractors, Inc., 388 F.2d 495, 499 (2d Cir.1967))(emphasis added in Mays)."
State Pers. Dep't v. Mays, 624 So.2d 194, 196 (Ala.Civ.App.1993). I believe the circuit court was correct in concluding that the Personnel Board's decision violated § 41-22-20(k)(6), Ala.Code 1975, because that decision was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. Therefore, I must respectfully dissent.